Index No. 05 Civ. 8444 (KMK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILFREDO BATISTA and ANNA SANCHEZ,

Plaintiffs,

-against-

THE CITY OF NEW YORK, STATE OF FLORIDA:
DEPARTMENT OF CORRECTIONS; STATE OF
FLORIDA: TAMPA EAST DIVISION AND PAROLE,

Defendants.

**DEFENDANT CITY OF NEW YORK'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Hillary A. Frommer*
*Tel: (212) 788-0823*
*NYCLIS No. 05SF025552*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................... ii

PRELIMINARY STATEMENT............................................................. 1

STATEMENT OF FACTS.................................................................... 2

ARGUMENT....................................................................................... 4

    POINT I

        STANDARD OF SUMMARY JUDGMENT............................... 4

    POINT II

        PLAINTIFFS FAILED TO ESTABLISH
        MUNICIPAL LIABILITY UNDER
        42 U.S.C. § 1983............................................................. 6

        A. Plaintiffs have failed to plead the existence
           of any municipal policy................................................ 7

        B. Plaintiffs cannot establish deliberate indifference.............. 11

        C. Plaintiffs cannot maintain a claim for municipal
           liability where there is no individual liability.................. 13

    POINT III

        PLAINTIFF ANNA SANCHEZ CANNOT STATE
        A FEDERAL CLAIM AGAINST THE CITY
        OF NEW YORK.............................................................. 15

    POINT IV

        PLAINTIFFS' STATE LAW CLAIMS FAIL
        AS A MATTER OF LAW................................................... 16

        A. The emotional distress claims fail................................ 16

        B. The negligent hiring, training, disciplining, and
           retaining claims fail.................................................. 18

        C. The vicarious liability claim must fail........................... 19

        D. Plaintiffs have no private right of action
           under the New York State Constitution........................... 20

CONCLUSION....................................................................................... 21

## TABLE OF AUTHORITIES

### Authority                                                    Page

### Case Law

Abreu v. City of New York,
　　04 CV 1721 (JBW), 2006 U.S. Dist. LEXIS 6506
　　(E.D.N.Y. Feb. 22, 2006)…………………………………… 5

Amnesty America v. Town of West Hartford,
　　361 F.3d 113 (2d Cir. 2004)………………………………… 11

Anderson v. Liberty Lobby, Inc.,
　　477 U.S. 242, 106 S. Ct. 2505 (1987)……………………... 5

Anthony v. City of New York,
　　00 Civ. 4688 (DLC), 2001 U.S. Dist. LEXIS 8923
　　(S.D.N.Y. July 2, 2001)…………………………………… 4, 5

Artis v. Liotard,
　　934 F. Supp. 101 (S.D.N.Y. 1996)………………………... 14

Baker v. McCollan,
　　443 U.S. 137, 99 S. Ct. 2689 (1979)……………………… 14

Berdugo v. City of New York,
　　03 Civ. 7319 (HB), 2004 U.S. Dist. LEXIS 16870
　　(S.D.N.Y. Aug. 24, 2004)………………………………… 7

Birthwright v. City of New York,
　　01 Civ. 3940 (CBM), 2005 U.S. Dist. LEXIS 19787
　　(S.D.N.Y. Sept. 8, 2005)………………………………… 17

Bodie v. Morgenthau,
　　342 F. Supp. 2d 193 (S.D.N.Y. 2004)…………………….. 7

Bovsun v. Sanperi,
　　61 N.Y.2d 291, 461 N.E.2d 843 (1984)…………………… 17

Brodeur v. City of New York,
　　99 Civ. 661 (WHP), 2002 U.S. Dist. LEXIS 4500
　　(S.D.N.Y. Mar. 18, 2002)………………………………… 8

Brown v. City of New York,
　　306 F. Supp. 2d 472 (S.D.N.Y. 2004)…………………….. 20

Brown v. Pierre,                                                                     12
    03 Civ. 812 (TLS)(JCF), 2006 U.S. Dist. LEXIS 49258
    (S.D.N.Y. July 12, 2006)……………………………………………………..

Burt Rigid Box, Inc. v. Travelers Property Cas. Corp.,
    302 F.3d 83 (2d Cir. 2002)……………………………………………… 5

City of Canton v. Harris,
    489 U.S. 378, 109 S. Ct. 1197 (1989)…………………………………... 11

City of Los Angeles v. Heller,
    475 U.S. 796, 106 S. Ct. 1571 (1986)………………………………….. 13

Claudio v. The City of New York,
    423 F. Supp. 2d 170 (S.D.N.Y. 2006)………………………………….. 6, 7

Coakley v. Jaffe,
    49 F. Supp. 2d 615 (S.D.N.Y. 1999)…………………………………… 20

Colodney v. Continuum Health Partners, Inc.,
    03 Civ. 7276 (DLC), 2004 U.S. Dist. LEXIS 6606
    (S.D.N.Y. April 15, 2004)……………………………………………… 18

Curley v. Village of Suffern,
    268 F.3d 65 (2d Cir. 2001)……………………………………………… 13

D'Amico v. City of New York,
    132 F.3d 134 (2d Cir. 1998)……………………………………………. 4

Duchesne v. Sugarman,
    566 F.2d 817 (2d Cir. 1997)…………………………………………… 15

Dukes v. City of New York,
    879 F. Supp. 335 (S.D.N.Y. 1995)……………………………………... 5

Dupree v. City of New York,
    418 F. Supp. 2d 555 (S.D.N.Y. 2006)…………………………………. 8

Dwares v. City of New York,
    985 F.2d 94 (2d Cir. 1993)…………………………………………… 7

Gallo v. Prudential Residential Servs.,
    22 F.3d 1219 (2d Cir. 1994)…………………………………………… 5

George v. Burton,
    00 Civ. 143 (NRB), 2001 U.S. Dist. LEXIS 24
    (S.D.N.Y. Jan. 4, 2001)……………………………………………… 7

Karoon v. New York City Transit Auth.,
 241 A.D.2d 323, 659 N.Y.S.2d 27 (1st Dep't 1997)............................. 18

Kenneth R. v. Roman Catholic Diocese of Brooklyn,
 199 A.D.2d 159, 654 N.Y.S.2d 791 (2d Dep't 1997)............................. 17

Kramer v. City of New York,
 04 Civ. 106 (HB), 2004 U.S. Dist. LEXIS 21914
 (S.D.N.Y. Oct. 29, 2004)............................................................. 18

Lauer v. City of New York,
 240 A.D.2d 543, 659 N.Y.S.2d 57 (2d Dep't 1997)............................. 16

Mahan et al. v. City of New York et al.,
 00 CV 6645 (DGT), 2005 U.S. Dist. LEXIS 14332
 (E.D.N.Y. July 19, 2005)............................................................. 8, 11

Marcus v. AT&T Corp.,
 138 F.3d 46 (2d Cir. 1998)........................................................... 16

Matican v. City of New York,
 424 F. Supp. 2d 497 (E.D.N.Y. 2006)............................................. 12, 13

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
 475 U.S. 574, 106 S. Ct. 1348 (1986)............................................. 4

Monell v. Dep't. of Soc. Servs.,
 436 U.S. 658, 98 S. Ct. 2018 (1978)............................................... 6

Morgan v. City of New York,
 166 F. Supp. 2d 817 (S.D.N.Y. 2001).............................................. 17, 18

Mortise v. United States,
 102 F.3d 693 (2d Cir, 1996)......................................................... 17

Perez v. The City of New York,
 97 CV 2915 (FB), 2002 U.S. Dist. LEXIS 4297
 (E.D.N.Y. Mar. 14, 2002)............................................................. 7, 8

Phillips v. Eppolito et al.,
 02 Civ. 5662 (DLC), 2004 U.S. Dist. LEXIS 18565
 (S.D.N.Y. Sept. 16, 2004)............................................................. 5

Pitchell v. Callan,
 13 F.3d 545 (2d Cir. 1994)........................................................... 16

Pizzuto v. County of Nassau,
 240 F. Supp. 2d 203 (E.D.N.Y. 2002).............................................. 15

Ricciuti v. N.Y.C. Trans. Auth.,
    941 F.2d 119 (2d Cir. 1991)……………………………………………….. 8

Richards v. City of New York,
    433 F. Supp. 2d 404 (S.D.N.Y. 2006)…………………………………… 12

Rivera v. The City of New York,
    04 Civ. 3032 (DLC), 2005 U.S. Dist. LEXIS 27098
    (S.D.N.Y. Nov. 9, 2005)……………………………………………….. 5, 14

Smith v. City of New York,
    290 F. Supp. 2d 317 (E.D.N.Y. 2003)………………………………… 8

Stuto v. Fleishman,
    164 F.3d 820 (2d Cir. 1999)…………………………………………….. 16

Velasquez v. Bankich,
    97 Civ. 8424 (AKH), 2000 U.S. Dist. LEXIS 15412
    (S.D.N.Y. Aug. 1, 2000)………………………………………………... 5

Vercillo v. Town/Vill. Of Harrison,
    01 Civ. 4734 (RCC), 2002 U.S. Dist. LEXIS 5029
    (S.D.N.Y. Mar. 26, 2002)……………………………………………… 6

Walker v. City of New York,
    974 F.2d 293 (2d Cir. 1993)……………………………………………. 11

Wilson v. The Diocese of New York of the Episcopal Church,
    96 Civ. 2400 (JGK), 1998 U.S. Dist. LEXIS 2051
    (S.D.N.Y. Feb. 26, 1998)……………………………………………….. 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

WILFREDO BATISTA and ANNA SANCHEZ,

                                        Plaintiffs,

                        -against-

THE CITY OF NEW YORK,  STATE OF FLORIDA:
DEPARTMENT OF CORRECTIONS; STATE OF
FLORIDA: TAMPA EAST DIVISION AND PAROLE,

                                        Defendants.

------------------------------------------------------------------------ x

**DEFENDANT CITY'S
MEMORANDUM OF LAW
IN SUPPORT OF ITS
MOTION FOR SUMMARY
JUDGMENT**

05 Civ. 8444 (KMK)

Defendant City of New York, by its attorney Michael A. Cardozo, Corporation Counsel

of the City of New York, hereby submits this Memorandum of Law in Support of its Motion for

Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking

dismissal of this matter in its entirety and with prejudice.

### Preliminary Statement

Plaintiffs commenced this action on or about September 30, 2005 pursuant to 42 U.S.C. §

1983 alleging that defendant City violated their constitutional and common law rights.

Specifically, plaintiff Wilfredo Batista alleges that the City is liable for his arrest which was

precipitated upon the issuance of a valid arrest warrant in the State of Florida and sent to New

York County to effectuate. Plaintiff Anna Sanchez brings this action against the City solely on

the theory that she sustained injury by her relationship of marriage to plaintiff Batista. Defendant

City of New York now moves for summary judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure on the grounds that: (1) plaintiffs failed to establish municipal liability against

defendant City of New York; (2) plaintiff Anna Sanchez cannot sustain a claim against the City

based on a purported right of companionship; and (3) plaintiffs' state law claims against the City fail as a matter of law.

## Statement of Facts

On February 12, 1998 plaintiff Wilfredo Batista was arrested in Hillsboro County, Florida and charged with the crimes of Robbery in the Second Degree and Criminal Mischief in the First Degree. (Def. 56.1 Stmt. ¶ 1). Plaintiff Batista pled guilty to both crimes and was sentenced to a term of probation by the Circuit Court of Hillsboro County, Florida and was sentenced to a total of 48 months of probation for both crimes. (Def. 56.1 Stmt. ¶¶ 2-3). Plaintiff Batista was ordered makes several monetary payments to and in Florida as a special condition to his probation sentence. Specifically, he was required to pay $40.00 each month to the State of Florida for the cost of his probation supervision. (Def. 56.1 Stmt. ¶ 4). Plaintiff Batista was also ordered to make monetary payments of $256.00 in court costs to the State of Florida, $150.00 to Florida for the cost of prosecution; $200.00 in restitution within the first 20 months of his probation, $150.00 to the crimes compensation fund in Florida, and a $50.00 PD application fee to Florida. (Def. 56.1 Stmt. ¶5). Mr. Batista was aware that he was required to make these monetary payments as a condition of his sentence. Additionally, plaintiff was sentenced to perform 50 hours of community service at the rate of five hours per month. (Def. 56.1 Stmt. ¶6).

In July 1998, plaintiff. Batista requested that the supervision of his probation be transferred from Florida to New York. (Def. 56.1 Stmt. ¶ 7). As a condition of that transfer, plaintiff Batista expressly agreed to comply with the conditions of his probation sentence that were fixed by both the State of Florida and the State of New York. (Def. 56.1 Stmt. ¶ 8). This included making all of the required monetary payments. Plaintiff also expressly agreed that if he did not comply with all of the conditions of his probation it would be considered a violation of

the terms and conditions of probation for which he could be deemed a fugitive and returned to the State of Florida. (Def. 56.1 Stmt. ¶ 9). Plaintiff's request to transfer his probation supervision from Florida to New York was granted and his probation reporting requirements became supervised by the New York City Department of Probation. (Def. 56.1 Stmt. ¶¶ 10-11). After his probation supervision was transferred to New York City in October 1998, plaintiff Batista was no longer required to pay the cost of probation supervision in Florida. (Def. 56.1 Stmt. ¶12). However, he was still required to make all other monetary payments to the State of Florida required as a condition of his sentence, including the court and prosecution costs, restitution costs, and crime compensation fund costs. Those monetary obligations were not transferred to New York or waived. (Def. 56.1 Stmt. ¶ 13).

Plaintiff Batista's sentence to report to probation expired on June 30, 2001. (Def. 56.1 Stmt. ¶ 14). However, in March 2001, the State of Florida Department of Corrections determined that plaintiff had failed to pay any of the monetary requirements ordered in 1998 as a special condition of his probation sentence. (Def. 56.1 Stmt. ¶ 15). On June 7, 2001 a warrant was issued in Hillsboro County, Florida for plaintiff Batista's arrest because the Florida Department of Corrections determined that plaintiff violated conditions of his probation. (Def. 56.1 Stmt. ¶¶16-17). Specifically, according to records maintained by the State of Florida, plaintiff Batista owed the State of Florida $40.00 for the cost of his probation supervision that he was required to pay before supervision of probation was transferred to the New York City Department of Probation. (Def. 56.1 Stmt. ¶ 18). Additionally, the Florida Department of Corrections determined that plaintiff violated his probation because he had not paid the total of $656.00 in court costs to the State of Florida as required as a special condition of his sentence. (Def. 56.1 Stmt. ¶ 19). Third,

the arrest warrant was also issued because Mr. Batista did not pay the $200.00 in restitution required as a special condition of his sentence. (Def. 56.1 Stmt. ¶ 20).

The Hillsboro County, Florida Sheriff's Office sent the warrant for plaintiff Batista's arrest to the New York County District Attorney's Office in June 2004 and specifically requested that plaintiff be arrested pursuant to that warrant because the State of Florida decided to extradite him. (Def. 56.1 Stmt. ¶¶ 21-22). Plaintiff Batista was subsequently arrested in New York City by the New York City Police Department solely because of the arrest warrant issued on June 8, 2001 charging him with the crime of probation violations. (Def. 56.1 Stmt. ¶ 23). However, plaintiff Batista was immediately released from custody on June 25, 2004 the very date on which the Circuit Court in Hillsboro County, Florida issued an order vacating the warrant and the very date on which the New York County District Attorneys' Office was informed that the Florida Department of Corrections decided not to extradite or prosecute him. (Def. 56.1 Stmt. ¶¶24-26). All of these facts are uncontested.

### Argument

### POINT I
### STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to expedite civil actions by eliminating from the trial calendar those claims that can be properly resolved as a matter of law. Summary judgment is appropriate where no genuine issue of material act exists. D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), cert. denied, 524 U.S. 911 (1998). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'" Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). Moreover, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anthony v.

City of New York, 00 Civ. 4688 (DLC), 2001 U.S. Dist. LEXIS 8923, at *9 (S.D.N.Y. July 2, 2001 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986)). Factual disputes that are irrelevant or unnecessary will not be counted." Dukes v. City of New York, 879 F. Supp. 335, 339 (S.D.N.Y. 1995).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. The Second Circuit has held that a "moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-23 (2d Cir. 1994). Once the moving party has asserted facts establishing that the non-movant's claims cannot be sustained, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" Rivera v. The City of New York, 04 Civ. 3032 (DLC), 2005 U.S. Dist. LEXIS 27098, at *5 (S.D.N.Y. Nov. 9, 2005) (quoting Burt Rigid Box, Inc. v. Travelers Property Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002). Moreover, "evidence that would not be admissible at trial cannot provide a basis for a denial of a motion for summary judgment." Abreu v. City of New York, 04 CV 1721 (JBW), 2006 U.S. Dist. LEXIS 6505, at *9 (E.D.N.Y. Feb. 22, 2006). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. The non-movant "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Velasquez v. Bankich, 97 Civ. 8424 (AKH), 2000 U.S. Dist. LEXIS 15412, at *4 (S.D.N.Y. Aug. 1, 2000). Nor may the non-moving party "rest upon the mere allegations or denials of the adverse party's pleading" in order to defeat summary judgment. Fed. R. Civ. P. 56(e); Phillips v. Eppolito et al., 02 Civ. 5662 (DLC), 2004 U.S. Dist. LEXIS 18565, at *5 (S.D.N.Y. Sept. 16, 2004).

In the matter at bar, the Court must conclude that summary judgment is appropriate because there is no genuine issue of material fact that the City did not maintain any unlawful policy, practice, or custom that directly led to a violation of plaintiffs' constitutional rights.

### POINT II
### PLAINTIFFS FAILED TO ESTABLISH MUNICIPAL LIABILITY
### UNDER 42 U.S.C. § 1983

Plaintiffs' claims against defendant City must be dismissed because plaintiffs failed to properly plead and cannot prove municipal liability. While the Supreme Court has deemed it permissible for a plaintiff to proceed against a municipal entity under Section 1983, it has repeatedly determined that the municipality itself must bear responsibility for a constitutional deprivation in order for liability to attach. In Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018 (1978), the Supreme Court held that in order to hold a municipality liable as a "person" under the meaning of section 1983, the plaintiff must show that a policy or custom of the City of New York caused the deprivation of his federal constitutional rights. "A municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691. "Rather, the Plaintiff must demonstrate that the alleged constitutional deprivation resulted from a municipal policy or custom and that there is a causal connection between the policy and the deprivation." Vercillo v. Town/Vill. of Harrison, 01 Civ. 4734 (RCC), 2002 U.S. Dist. LEXIS 5029, *2-3 (S.D.N.Y. Mar. 26, 2002) (citing Monell 436 U.S. at 694). "The plaintiff must establish that the municipality either authorized the employee to act in violation of the plaintiff's rights, or was the 'moving force' behind the violation." Vercillo, 2002 U.S. Dist. LEXIS 5029, at *4. In fact, unless a plaintiff can show that his rights "were violated pursuant to... municipal custom or policy, a theory of City liability will fail. Claudio v. The City of New York, 423 F. Supp. 2d

170, 171 (S.D.N.Y. 2006) quoting Bodie v. Morgenthau, 342 F. Supp. 2d 193, 206 (S.D.N.Y. 2004).

### A.    Plaintiffs have failed to plead the existence of any municipal policy

To sustain a claim against the City, plaintiffs' pleadings "must have included allegations tending to show that an identified municipal practice or police was the 'moving force behind the alleged constitutional violation.'" Claudio, 423 F. Supp. 2d  at 171 (dismissing complaint because it contained no allegation of a municipal policy and the plaintiff pled nothing to indicate the City's responsibility for a deprivation of rights).  A plaintiff must not only allege specific facts regarding the existence of a policy or custom, but also allege a causal connection between that policy and the unlawful conduct towards him. Perez v. The City of New York, 97 CV 2915 (FB), 2002 U.S. Dist. LEXIS 4297, at *5 (E.D.N.Y. Mar. 14, 2002); George v. Burton, 00 Civ. 143 (NRB), 2001 U.S. Dist. LEXIS 24, *5-6 (S.D.N.Y. Jan 4, 2001) (court dismissing complaint with prejudice where plaintiff "failed to proffer any facts in his complaint from which we can infer such a pattern or practice"). It is well settled that a plaintiff cannot sustain a claim against the City simply by stating that a municipal policy or custom exists. The "mere assertion that a municipality has such a policy is insufficient to establish Monell liability." Perez, 2002 U.S. Dist. LEXIS 4297, at *4; Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) (court holding that "the mere assertion … that a municipality has … a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference").  In fact, courts in this District dismiss claims against a municipality where the pleadings contain only conclusory, boilerplate assertions or are barren of any allegation of municipal policy. See Berdugo v. City of New York, 03 Civ. 7319 (HB), 2004 U.S. Dist. LEXIS 16870 (S.D.N.Y. Aug. 24, 2004) (conclusory statement insufficient to establish municipal

liability); Smith v. City of New York, 290 F. Supp. 2d 317 (E.D.N.Y. 2003) (conclusory, boilerplate assertions of a municipal policy insufficient to survive a motion to dismiss).

Moreover, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991); Perez, 2002 U.S. Dist. LEXIS 4297, at *6; Dupree v. City of New York, 418 F. Supp. 2d 555, 558 (S.D.N.Y. 2006) (noting plaintiff only pointed to single incident of his case and holding it did not constitute proof of a municipal policy); Mahan et al. v. City of New York et al., 00 CV 6645 (DGT), 2005 U.S. Dist. LEXIS 14332, at *12 (E.D.N.Y. July 19, 2005) (dismissing failure to train claim where plaintiff alleged only a single incident that involved individuals below policy making level); Brodeur v. City of New York, 99 Civ. 661 (WP), 2002 U.S. Dist. LEXIS 4500, *7 (S.D.N.Y. Mar. 18, 2002) (court dismissing complaint against City where complaint "flatly asserts a policy but contains no factual allegations sufficient to establish a municipal policy or custom").

Here, plaintiffs do not allege anywhere in the Amended Complaint that the City maintains a policy, practice, or custom that caused a violation of their constitutional rights. Defendant City notes that plaintiffs have alleged in conclusory fashion and as a purely state law claim, that the City negligently hired, trained, disciplined, and retained employees. Yet, plaintiffs do not even contend that such purported negligent hiring, training or discipline constitutes a municipal policy. Rather, the Amended Complaint states,

> 53.   Defendant New York City and the State of
> Florida Department of corrections, owed a duty of
> care to Mr. Batista to prevent the conduct alleged,
> because under the same or similar circumstances a
> reasonable, prudent and carefully person should
> have anticipated that injury to plaintiff or those in a
> like situation would probable result from the
> foregoing conduct.

54. Upon information and belief, all of the defendants were unfit and incompetent for their positions.

55. Upon information and belief, defendant New York City and the State of Florida Department of Corrections, knew or should have known through the exercise of reasonable diligence that the individual defendants would act in an irrational manner.

56. Upon information and belief, defendant New York City and the State of Florida Department of Corrections were negligent in screening, hiring, training, disciplining, and retaining those employees proximately caused plaintiff's damages. [sic]

(See Amended Complaint). The Amended Complaint contains no other allegations against the City of New York.

Even if the Court liberally construes these paragraphs to allege a purported municipal policy of negligent hiring, training, disciplining, and retention, it should conclude that they are nothing more than blanket statements insuffiicent to survive a motion for summary judgment. By the very nature of the Amended Complaint, plaintiff Batista has alluded to two wholly separate City agencies who were purportedly responsible for his arrest: the New York City Police Department which effected the valid arrest warrant issued by Hillsboro County, Florida; and the New York City Department of Probation, which oversaw plaintiff Batista's reporting requirements starting in October 1998 as required by the conditions of his probation. The negligent hiring and training claim is not only broad sweeping, but also does not even provide the minimum notice pleading requirements required by Rule 8 of the Federal Rule of Civil Procedure as to identify which municipal employees—police officers or probation officers—were allegedly negligently hired, trained, or disciplined and, therefore, liable to plaintifs.

Plaintiffs do not allege anywhere in their Amended Complaint that the police officers who arrested plaintiff pursuant to a valid arrest warrant who were purportedly negligently trained in their police duties by executing the valid Florida warrant or how training of those officers directly caused and was responsible for his arrest. Additionally, the pleadings contain no allegation whatsoever that the probation officers who supervised plaintiff's reporting to the New York City Department of Probation were allegedly negligently hired, trained or disciplined—as a municipal policy—in ensuring that plaintiff properly complied with his reporting requirements or how such purported negligent hiring or training directly caused plaintiff Batista's arrest pursuant to the Florida warrant.  It is clear from the face of the complaint that plaintiffs claim that the City negligently hired and trained all of this employees, from police officers to civilian probation officers. The Court must conclude that this wholly generalized allegation fails to support a federal claim against the City.

Moreover, plaintiffs allege nothing more than a single isolated incident—plaintiff Batista's own arrest pursuant to the valid Florida warrant. Plaintiffs have not deduced and cannot present any admissible evidence whatsoever that any other individual was sentenced to probation with special conditions in a state other than New York, requested and received transfer of probation supervision to the New York City Department of Probation, and arrested pursuant to the other state's arrest warrant for violating the conditions of probation in that other state. This other evidence is necessary for plaintiffs to establish a policy or practice of the City of New York directly caused plaintiff Batista's arrest. Because plaintiffs cannot present any such evidence, they cannot make any showing that the City maintains any policy or practice that caused a deprivation of his rights.

**B.**     <u>Plaintiffs cannot establish deliberate indifference</u>

Where the particular basis for the claim of municipal liability is a failure to train, supervise or discipline employees, "only where a failure ... reflects a deliberate or conscious choice by a municipality ... can a city be liable for such failure under § 1983." <u>City of Canton v. Harris</u>, 489 U.S. 378, 389, 109 S. Ct. 1197 (1989); <u>Mahan et al. v. City of New York et al.</u>, 00 CV 6645 (DGT), 2005 U.S. Dist. LEXIS 14332, at *12 (E.D.N.Y. July 19, 2005). The inquiry focuses on "whether the actions of the employee in question may be said to represent the conscious choices of the municipality itself." <u>Amnesty America v. Town of West Hartford</u>, 361 F.3d 113, 126 (2d Cir. 2004). In a "failure to train" context, a plaintiff must establish that the officials "consciously disregarded a *risk* of future violations of clearly established constitutional rights by badly trained employees." <u>Id</u>. at 127, n8. In <u>Walker v. City of New York</u>, the Second Circuit set forth three requirements a plaintiff must satisfy to prove that a municipality's failure to train constituted deliberate indifference:

> First the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation... Second the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation... Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizens' constitutional rights.

974 F.2d 293, 297-98 (2d Cir. 1993). The court in <u>Matican v. City of New York</u>, directly applied the Second Circuit's three-part test and found that the plaintiff's failure to show that an individual violated his constitutional rights "means he cannot satisfy the third [requirement]; that

is, he cannot demonstrate that lack of training caused the deprivation of his constitutional rights because no such deprivation occurred in the first place." 424 F. Supp. 2d 497, 508 (E.D.N.Y. 2006). Moreover, courts will dismiss municipal liability claims where a plaintiff does not meet the Walker standard and fails to put forth any evidence of an official policy and a causal connection between such policy and the deprivation of constitutional rights. See Brown v. Pierre, 03 Civ. 812 (LTS)(JCF), 2006 U.S. Dist. LEXIS 49258 (S.D.N.Y. July 12, 2006); Richards v. City of New York, 433 F. Supp. 2d 404 (S.D.N.Y. 2006) (dismissing municipal liability where plaintiffs put forth no evidence to satisfy Second Circuit standard and establish deliberate indifference).

In the matter at bar, plaintiffs cannot proffer a single piece of evidence to establish that the City maintains a policy or practice of negligently hiring, training, disciplining, and retaining employees that constitutes deliberate indifference. Certainly, plaintiffs cannot present sufficient evidence to satisfy the Second Circuit's deliberate indifference test. Plaintiffs have not adduced and, therefore, cannot put forth a scintilla of evidence to prove: (1) the City's policy concerning hiring, training, disciplining, and retaining of its police officers or probation officers; (2) that such purported policy is deficient; (3) that any policymaker knew and consciously disregarded any deficiency in the policy; (4) that such policy directly caused a deprivation of plaintiffs' constitutional rights; or (5) that any policy maker knew that failing to change the purported policy would result in the future deprivation of the constitutional rights of individuals in similar situations as plaintiffs. Moreover, plaintiffs have not identified nor conducted any discovery with respect to the police personnel who executed the Florida warrant and arrested plaintiff Batista or the probation personnel who supervised plaintiff's probation reporting requirements, to even make a threshold showing that those particular individuals were negligently hired, trained

-12-

or disciplined. Applying the general requirements of <u>Walker</u> to plaintiffs' specific theory, to sustain their claims, plaintiffs must present admissible evidence of the following: police and probation department personnel were negligently hired, trained, or disciplined in a way that caused Florida Department of Corrections to issue a warrant for plaintiff Batista's arrest after that agency independently determined that plaintiff Batista did not comply with the monetary obligations of his 1998 sentence; different training or discipline of those officials would have resulted in their knowing the actions of the Florida Department of Corrections and either causing the State of Florida not to issue the arrest warrant and seek extradition or to disregard the warrant once forwarded to New York County for execution; and consciously disregarding the need for different training would have resulted in no arrest of plaintiff Batista. Clearly, plaintiffs cannot put forth a single piece of evidence to prove these facts, and as such evidence is necessary to sustain a claim that the City maintains a policy of negligent hiring, training, disciplining, and retaining its employees, the Court should grant summary judgment in the City's favor and dismiss this action.

C.     **Plaintiffs cannot maintain a claim for municipal liability where there is no individual liability**

Finally, plaintiffs' claims against the City fail as a matter of law because municipal liability cannot exist if individual defendants have not violated the plaintiff's constitutional rights. <u>City of Los Angeles v. Heller</u>, 475, U.S. 796, 799, 106 S. Ct. 1571 (1986). In fact, this particular Supreme Court holding "applies to failure-to-train claims because a municipality's failure to train its officers is only actionable if the failure results in constitutional violations by individual officers." <u>Matican v. City of New York</u>, 424 F. Supp. 2d 497, 508 (E.D.N.Y. 2006) <u>quoting</u> <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 71 (2d Cir. 2001) (holding "following <u>Heller</u>, we have recognized that a municipality cannot be liable for inadequate training or supervising

when the officers involved in making an arrest did not violate the plaintiff's constitutional rights"). In <u>Matican</u> (where, contrary to this case, that plaintiff named and proceeded against individual defendants) the court found that because the individual defendants did not violate the plaintiff's constitutional rights, his failure-to-train claim against the City was barred. Similarly, in <u>Rivera v. City of New York</u>, the court held that there could be no municipal liability where it had determined that the plaintiff's arrest was lawful and, therefore, the plaintiff failed to prove an underlying constitutional violation of his rights by the individual defendant. 04 Civ. 3042 (DLC), 2005 U.S. Dist. LEXIS 27098, at *10 (S.D.N.Y. Nov. 9, 2005). <u>Matican</u> is directly applicable here, where, notably, plaintiff has not brought suit against any individual (either by specific name or as a "John Doe" defendant)—only the City of New York and the State of Florida. Thus, plaintiffs cannot prove an underlying constitutional violation by any <u>individual.</u>  While the Amended Complaint asserts claims of false arrest and false imprisonment, they must be dismissed as a matter of law as plaintiffs have not named  an individual defendants against whom those claims could be asserted. Further, plaintiffs cannot establish any underlying constitutional violation. The false arrest and false imprisonment claims fail on the merits because it is uncontested that plaintiff Batista was arrested pursuant to a valid arrest warrant issued in Florida. "No civil action is available to plaintiff under Section 1983 for an arrest made pursuant to a valid arrest warrant." <u>Artis v. Liotard</u>, 934 F. Supp. 101, 103 (S.D.N.Y. 1996) <u>citing</u> <u>Baker v. McCollan</u>, 443 U.S. 137, 145, 99 S. Ct. 2689 (1979). Plaintiffs' failure to establish an underlying constitutional violation is crucial to and in fact bars plaintiff's municipal liability claims against the City.

**POINT III**

**PLAINTIFF ANNA SANCHEZ CANNOT STATE A FEDERAL CLAIM AGAINST THE CITY OF NEW YORK**

In addition to the reasons set forth in Part II supra, this Court must also dismiss the claims brought by plaintiff Anna Sanchez who seeks to hold the City liable solely on the basis of her marriage to plaintiff Batista. Again, plaintiff Sanchez brings no allegations whatsoever that the City maintains a policy or practice that directly resulted in a deprivation of her constitutional rights. Notably, she was not arrested or detained in connection with plaintiff Batista's probation violations. Without even alleging that any municipal policy directly caused a deprivation of her rights, and without enumerating an underlying constitutional violation, plaintiff Sanchez simply states that she sustained damages as a result of being married to plaintiff Batista by having to care for his children on her own and with only her money during the brief time that plaintiff Batista was in custody after his arrest on the warrant. This "claim" is wholly without merit and must be dismissed as a matter of law. Moreover, there can be no claim against the City for the right of companionship. The Second Circuit has permitted a plaintiff to bring a claim based on the right of companionship "only where custodial relations are involved" and even then, a plaintiff must show through admissible evidence that the government intentionally sought to interfere with that relationship." Pizzuto v. County of Nassau, 240 F. Supp. 2d 203, 210 (E.D.N.Y. 2002) citing Duchesne v. Sugarman, 566 F.2d 817 (2d Cir. 1997).

Here, plaintiff Sanchez does not allege that any municipal official deliberately interfered with her custodial relations with her children. In fact, there was no interference between plaintiff Sanchez and her children. Plaintiff Sanchez brings no allegation, and can offer no evidence whatsoever, that the City intentionally sought to interfere with her custodial relationship. These

failings, in addition to those set forth in Part II are fatal to her claim and therefore, summary is warranted.

**POINT IV**
**PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW**

Plaintiffs have asserted the common law claims under New York law of intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, training, disciplining, and retaining employees, liability under the doctrine respondeat superior, and a violation of the New York State Constitution. At the outset, the Court should dismiss each of these state law claims because "in general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998); Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994). Additionally, each of these claims should be dismissed on the merits.

**A.    The emotional distress claims fail**

First, plaintiffs have not named any individual defendants in this action. As already established, the only defendants are the City of New York and the State of Florida. Public policy prohibits recovery for claims of intentional infliction of emotional distress against the City and the State. See Lauer v. City of New York, 240 A.D.2d 543, 659 N.Y.S.2d 57 (2d Dep't 1997), app. denied, 91 N.Y.2d 807 (1998). Thus, without even so much as identifying an individual actor or even bringing suit against an individual, plaintiffs cannot state a claim for intentional infliction of emotional distress or negligent infliction of emotional distress.    Even if the intentional infliction of emotional distress claim could proceed, it would still fail because to support a claim for intentional infliction of emotional distress under New York law, a plaintiff must prove conduct that is "regarded as atrocious and intolerable in a civilized society." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)(quotation and citations omitted). The "conduct

must be intentionally directed at the plaintiff and lack any reasonable justification." <u>Birthwright</u> <u>v. City of New York</u>, 01 Civ. 3940 (CBM), 2005 U.S. Dist. LEXIS 19787, at *35 (S.D.N.Y. Sept. 8, 2005). Here, plaintiff Batista's arrest pursuant to a validly issued Florida arrest warrant was certainly not conduct that was "intolerable in a civilized society" and was indeed reasonably justified. Similarly, immediately dismissing charges against plaintiff Batista and releasing him from custody when the State of Florida decided not to pursue extradition and the prosecution against him is not "intolerable" conduct. With respect to plaintiff Sanchez, she wholly fails to allege any conduct directed specifically at her that would even support a claim of intentional infliction of emotional distress. Indeed, the pleadings are barren of any allegation and plaintiffs cannot put forth any evidence to support this claim. Thus, the intentional infliction of emotional distress claim must be dismissed.

To sustain a claim of negligent infliction of emotional distress under New York State law, plaintiffs must establish through admissible evidence that they were in the "zone of danger." The "zone of danger" rule provides that "where a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover, as a proper element of his or her damages, damages for injuries suffered in consequence of the observation of the serious injury or death of a member of his or her immediate family -- assuming, of course, that it is established that the defendant's conduct was a substantial factor bringing about such injury or death." <u>Bovsun v. Sanperi</u>, 61 N.Y.2d 291, 461 N.E.2d 843, 848 (1984); <u>Mortise v. United</u> <u>States</u>, 102 F.3d 693, 696 (2d Cir. 1996). Here, there should be no question that no "zone of danger" existed as neither plaintiff Batista, plaintiff Sanchez, nor any member of their immediate family was exposed to any risk of bodily injury or death only the witnessing of which could give rise to the instant claim. Thus, it must be dismissed as a matter of law. See <u>Morgan v. City of</u>

-17-

New York, 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001) (rejecting negligent infliction of emotional distress claim where there was no risk of bodily injury or death of plaintiff's family member).

**B.      The negligent hiring, training, disciplining, and retaining claims fail**

To state a claim under New York law for negligent hiring, supervision, and retention, the plaintiff must prove with evidence that "the employer knew or should have known of the employee's propensity for the conduct which caused the injury." Wilson v. The Diocese of New York of the Episcopal Church, 96 Civ. 2400 (JGK), 1998 U.S. Dist. LEXIS 2051, at *10-11 (S.D.N.Y. Feb. 26, 1998) (citing Kenneth R. v. Roman Catholic Diocese of Brooklyn, 199 A.D.2d 159, 654 N.Y.S.2d 791, 793 (2d Dep't 1997)). Here, plaintiffs have failed to identify the municipal employees who were allegedly negligently hired or trained. Moreover, plaintiffs have not identified and cannot present any evidence of the specific actions taken by municipal employees that directly caused alleged injury to plaintiffs. Without even this minimal evidence, plaintiff cannot establish that the City knew or should have known that these mysterious and unknown employees had a propensity to engage in unknown and unspecified conduct that caused injury. It should be clear that plaintiffs cannot state any claim for negligent hiring, training, disciplining, or retention on the merits.

Moreover, this claim must fail because where an employee is acting within the scope of his employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention. Kramer v. City of New York, 04 Civ. 106 (HB), 2004 U.S. Dist. LEXIS 21914 (S.D.N.Y. Oct. 29, 2004); Colodney v. Continuum Health Partners, Inc., 03 Civ. 7276 (DLC), 2004 U.S. Dist. LEXIS 6606 (S.D.N.Y. April 15, 2004); Karoon v. New York City Transit Auth., 241 A.D.2d 323, 659 N.Y.S.2d 27 (1st Dep't 1997). The court in

Karoon noted that if the employee was not negligent, then there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment, under the theory of respondeat superior regardless of the reasonableness of the hiring or retention or the adequacy of the training. Here, plaintiffs have specifically claimed in the Amended Complaint that the City is liable under the doctrine of respondeat superior. While plaintiffs cannot identify any municipal employee who was allegedly negligently hired, trained, or disciplined, plaintiffs expressly allege that any such individuals were acting "within the scope of their employment" with the City. (See Amended Complaint, ¶ 6).  By; electing to claim liability under respondeat superior, plaintiffs cannot also claim liability based on negligent hiring or training.

### C.      The vicarious liability claim must fail

Plaintiffs' cannot state a claim against the City under the doctrine of respondeat superior because plaintiffs cannot put forth any evidence that any municipal employee engaged in negligent conduct in furtherance of the City's business for which the City could be held liable. Plaintiff Batista was arrested pursuant to an arrest warrant validly executed in the State of Florida and specifically sent to New York County for execution on plaintiff Batista. According to that warrant, plaintiff Batista did not comply with the condition of his 1998 sentence for pleading guilty.  According to the terms and conditions of Mr. Batista's probation sentence, he was required to: (1) report to a probation officer in New York City; (2) pay $40.00 per month for the cost of supervision to the State of Florida until his probation became supervised by New York; (3) pay $656.00 in court costs to the State of Florida; (4) pay restitution in Florida in the amount of $200.00; and (5) complete 50 hours of community service.  Plaintiff was arrested pursuant to that warrant when the State of Florida determined that he had not satisfied all of these five conditions. Plaintiff cannot present any evidence that any New York City employee

-19-

engaged in any conduct that was negligent and that such particular negligence resulted in the arrest; especially when it appears that plaintiff himself was negligent in failing to comply with the special conditions of his probation sentence. Certainly, executing a validly executed arrest warrant is proper conduct and would not give rise to vicarious liability against the City.  In fact, the law requires law enforcement to execute such warrant by arresting the criminal defendant. Additionally, plaintiff's reporting requirements were supervised by the New York City Department of Probation. Certainly the conduct of making sure that plaintiff reported to a probation officer as required under the terms of his probation sentence in Florida was proper conduct and would not give rise to vicarious liability against the City. Moreover, it is clear that plaintiff Batista's arrest was requested by the State of Florida and resulted from decisions made by individuals in the State of Florida—not New York City. Therefore, plaintiffs cannot present any admissible evidence that would support a claim against the City for vicarious liability.

### D.  **Plaintiffs have no private right of action under the New York State Constitution**

Plaintiffs' final state law claim is for violation of their rights secured by Article I, § 12 of the New York State Constitution. This claim must be dismissed as a matter of law because plaintiffs have no private right of action under the New York State Constitution for claims that can be remedied under other state or federal laws pursuant to 42 U.S.C. § 1983. Brown v. City of New York, 306 F. Supp. 2d 473, 481 (S.D.N.Y. 2004); Coakley v. Jaffe, 49 F. Supp. 2d 615, 628 (S.D.N.Y. 1999).  Here, it is clear that any and all claims plaintiffs asserted were remedied under viable New York common law theories of liability. Thus, plaintiffs cannot assert a separate private right of action for violation of the New York State Constitution.

## Conclusion

For the foregoing reasons, defendant City of New York respectfully requests that the Court grant its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and dismiss this matter in its entirety with prejudice.

Dated:    New York, New York
           December 11, 2006

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Defendant City
100 Church Street
Room 3-212
New York, New York 10007
(212) 788-0823

By: _____
Hillary A. Frommer (HF 9286)
Assistant Corporation Counsel

## CERTIFICATE OF SERVICE BY MAIL

I, Hillary A. Frommer, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that on December 18, 2006, I served the annexed **Defendant City's Memorandum of Law in Support of Its Motion for Summary Judgment** upon the following counsel of record by depositing a copy of same, enclosed in a first-class postpaid properly addressed wrapper, in a post office/official depository under the exclusive care and custody of the United States Postal Service, within the State of New York, directed to said attorney at the address set forth below, being the address designated by said attorney for that purpose:

Joy Bunch
Law Offices of Brogdon & Bunch, LLP
250 Fulton Avenue
Suite M200
Hempstead, New York 11550

Gerald D. Siebens,
Assistant Attorney General
Office of the Attorney General
Tampa Civil Litigation Bureau
501 East Kennedy Boulevard, Suite 1100
Tampa, Florida 33602-5237

Dated: New York, New York
December 18, 2006

Hillary A. Frommer