UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILFREDO BATISTA and ANNA SANCHEZ,

                          Plaintiffs,

         -v-

THE CITY OF NEW YORK; STATE OF FLORIDA:
DEPARTMENT OF CORRECTIONS; STATE OF
FLORIDA:  TAMPA EAST DIVISION and PAROLE,

                          Defendants.

Case No. 05-CV-8444 (KMK)

OPINION AND ORDER

Appearances:

Joy S. Bunch, Esq.
Law Offices of Brogdon & Bunch, LLP
Hempstead, NY
*Counsel for Plaintiffs*

Michael A. Cardozo, Esq.
Corporation Counsel of the City of New York
Hillary A. Frommer, Esq.
Assistant Corporation Counsel
New York, NY
*Counsel for Defendant City of New York*

Bill McCollum, Esq.
Attorney General of the State of Florida
Gerald D. Siebens, Esq.
Assistant Attorney General
Tampa, FL
*Counsel for Defendants State of Florida:  Department of
Corrections, and State of Florida:  Tampa East Division and Parole*

KENNETH M. KARAS, District Judge:

        Plaintiff, Wilfredo Batista ("Batista"), brings this action pursuant to 42 U.S.C. § 1983.

Batista alleges various violations of his constitutional rights, as well as his common law rights

under New York State law, arising from his arrest in the City of New York following the

issuance of an arrest warrant in the State of Florida for alleged probation violations.  Plaintiff, Anna Sanchez ("Sanchez"), Batista's wife, claims loss of consortium as a result of Batista's arrest and subsequent detention.

Before this Court is Defendant City of New York's ("New York City") Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, and Defendants State of Florida:  Department of Corrections and State of Florida:  Tampa East Division and Parole's ("Florida Defendants") Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  In opposition to both Motions, Plaintiffs rely on materials outside the Amended Complaint, including letters sent by Plaintiffs to the State of Florida which Plaintiffs claim demonstrate a waiver of the state's sovereign immunity.  For the reasons set forth below, the Court will consider both Motions under the summary judgment standard and GRANTS both Motions.

## I.  Background

### A.  Factual Background

On February 12, 1998, Batista was arrested in Hillsborough County, Florida, on charges of robbery in the second degree and criminal mischief in the first degree.  (Aff. In Opp'n ¶ 3 ("Batista's Aff. In Opp'n.").)  Batista pled guilty to both charges and was sentenced to a forty-eight month term of probation and was ordered to pay forty dollars each month towards the cost of his probation supervision.  (Def. City's Notice of Mot., Ex. B ("City's Notice of Mot.").)  As a condition of his guilty plea, Batista was ordered to comply with special conditions of his probation, which included payments to the State of Florida for restitution in the amount of $200, $256 in court costs, $150 to the court improvement fund, $150 for the cost of prosecution, a $50 PD application fee, and the performance of fifty hours of community service.  (Affirmation in

2

Opp'n to Def's Mot. for Summ. J., Ex. C ("Pls.' Affirmation in Opp'n").)  The exact amount of

the payments required by the special conditions of Batista's probation is in dispute.  It appears

from exhibits attached to the Parties' Motion papers that the State of Florida issued two separate

orders of probation both dated July 1, 1998, indicating different payment amounts, (Pls.'

Affirmation in Opp'n, Exs. B, C; City's Notice of Mot., Ex. B), one of which bears Batista's

signature, (Pls.' Affirmation in Opp'n, Ex. C; Batista Aff. In Opp'n ¶ 7).  Batista contends that

he was unaware of any monetary obligations imposed as conditions to his Florida probation.

(Batista's Aff. In Opp'n ¶ 6.)  This dispute is immaterial to the resolution of these Motions.

On July 1, 1998, Batista filed an application with the Florida Department of Corrections'

Parole Commission seeking to transfer his probation supervision from Florida to the State of

New York, where he planned to take up residence with his mother, Celeste Batista.  (City's

Notice of Mot., Ex. C.)  As a condition of his probation supervision transfer request, Batista

agreed to comply with the conditions of supervision as fixed by the State of Florida.  (Def. City's

Statement of Uncontested Material Facts Pursuant to Local Rule 56.1 ¶¶ 9, 13. ("New York

City's 56.1 Stmt.").)  He further agreed that failure to comply with those provisions would be

deemed a violation of the terms of his probation which could result in his extradition to the State

of Florida.  (*Id.*)  On October 14, 1998, the City of New York's Department of Probation

accepted Batista's probation supervision transfer request, under which Batista was still required

to make all payments to which he was subject under the conditions of his Florida probation, with

the exception that he did not have to pay for the cost of his probation supervision.  (*Id.* ¶¶ 10-14.)

Before Batista's term of probation was scheduled to expire on June 30, 2001, the Florida

Department of Corrections requested a progress report on March 19, 2001 on his compliance

with the special conditions of his probation from the City of New York's Department of

Probation.  (*Id.* ¶ 15; City's Notice of Mot., Ex. F.)  The Florida Department of Corrections'

records indicated that Batista had failed to satisfy any of the monetary obligations under the

special conditions of his probation.  (*Id.*)  On June 7, 2001, the Florida Department of

Corrections issued a warrant for Batista's arrest, citing two probation violations.  (City's Notice

of Mot., Ex. G.)  The first violation alleged that Batista failed to pay the cost of his probation

supervision and court costs.  (*Id.*)  The second violation indicated that because the Florida

Department of Corrections failed to locate Batista on three separate occasions by either directly

contacting the State of New York or via Interstate Compact with a request for a progress report,

Batista's whereabouts were determined to be unknown, and as a result, he was considered an

absconder by the Florida Department of Corrections.  (*Id.*)

On June 16, 2004, Detectives from the 33rd Precinct in New York County attempted to

execute the arrest warrant at the residence of Celeste Batista, which was Batista's last known

address, but Batista was not home.  (Am. Compl. ¶ 1.)  The next day, Batista surrendered at the

33rd Precinct, and was arrested pursuant to the Florida arrest warrant.  (Batista's Aff. In Opp'n ¶

10.)  Batista remained in the custody of the New York City Police Department for nine days.

Then, on June 25, 2004, the Circuit Court of Hillsborough County, Florida, issued an order

dismissing the Batista warrant.  (New York City's 56.1 Stmt. ¶¶ 24-26.)  That same day, Batista

was released from police custody and all charges against him were dismissed after Anna

Sanchez, Batista's wife, paid $905, presumably in satisfaction of the payments required by the

Florida sentencing court.  (Batista's Aff. in Opp'n ¶ 12.)

B.  Plaintiffs' Claims

Plaintiffs' Complaint contains six claims for relief.  First, Batista alleges that his arrest "without probable cause" and subsequent "detainment, harassment and intimidation" caused him "to suffer emotional injuries" in violation of his Eight and Fourteenth Amendment rights as secured by 42 U.S.C. § 1983.  (Am. Compl. ¶ 27.)  Batista further alleges in the first claim for relief that "Defendants conspired among themselves to deprive [him] of his rights secured by 42 U.S.C. § 1983 . . . and took numerous overt steps in furtherance of such conspiracy." (*Id.* ¶ 28.) Batista's second claim for relief alleges false arrest and false imprisonment and claims that for "a period of approximately nine days, [Batista] was unlawfully, wrongfully, and unjustifiably held in a New York City jail, under arrest and in uncivilized conditions, and deprived of his liberty, and falsely charged."  (*Id.* ¶ 36.)  Batista's third claim for relief is for intentional infliction of emotional distress, and claims that "Defendants engaged in extreme and outrageous conduct intentionally and recklessly causing [him] severe emotional distress," and that he was held "for a period of nine days without proper food and hygienic care."  (*Id.* ¶ 43.)  Relatedly, Batista claims that Defendants are also liable for negligent infliction of emotional damages in the fourth claim for relief.  (*Id.* ¶ 50.)  Batista's fifth claim for relief is for negligent hiring, training, and retention of employment services, and alleges that Defendants "owed a duty of care to Mr. Batista to prevent the conduct alleged," *id.* ¶ 53, and were "negligent in screening, hiring, training, disciplining, and retaining" those employees proximately causing Batista's damages, *id.* ¶ 56. Batista's sixth[1] and final claim for relief is a claim under Article I, § 12, of the New York State

_____

[1] Plaintiffs' Amended Verified Complaint mislabels their sixth claim for relief as their fifth claim for relief.

Constitution, which prohibits unreasonable searches and seizures.  Finally, Plaintiff Sanchez

brings one claim for a relief under New York State law, alleging loss of consortium as a result of

Batista's arrest.  (Am. Compl. ¶¶ 31, 41, 57, 51, 58, 65; Pl's Mem. of Law in Opp'n 9.)

C.  Procedural History

On December 11, 2006, the City of New York moved the Court for an order pursuant to

Federal Rule of Civil Procedure 56, granting summary judgment to dismiss Plaintiffs' Amended

Complaint in its entirety with prejudice.  On December 13, 2006, the Florida Defendants moved

pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Amended Complaint

with prejudice for failure to state a claim upon which relief can be granted.  On August 13, 2007,

the Court held oral argument.[2]

II.  Discussion

A.  Standard of Review

1.  Converting a Motion to Dismiss to a Motion For Summary Judgment

Florida Defendants argue that the Eleventh Amendment to the U.S. Constitution renders

them immune from suit in this Court.  Florida Defendants thus move to dismiss pursuant to Fed.

R. Civ. P. 12(b)(6).  Plaintiffs oppose Florida Defendants' Motion by arguing that Florida

Defendants waived their Eleventh Amendment immunity.  In support of that claim, Plaintiffs

point to correspondence between counsel and Florida Defendants.  (Pls.' Affirmation in Opp'n,

Exs. L, M.)  During oral argument on these Motions, Plaintiffs expressly relied on that

correspondence to rebut Florida Defendants claim that it is immune from suit in federal court.

---

[2]Originally, the Court scheduled oral argument for July 19, 2007, but Plaintiffs' counsel
failed to appear.

(Tr. 25-28, Aug. 13, 2007.)  To consider this correspondence, the Court must convert the Motion to a motion for summary judgment, because the correspondence is outside the four corners of the pleadings.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (explaining that when a court ruling on a motion to dismiss considers matters outside the pleadings, it is required to convert the motion from a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment).  When the Parties ask the Court to weigh evidence outside of the pleadings and thereby test the merits of the evidence, not the complaint, such action is "more appropriately reserved for the summary judgment procedure, governed by Rule 56, where both parties 'may conduct appropriate discovery and submit the additional supporting material contemplated by' that rule."  *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002)).  A court may convert a motion to dismiss into a motion for summary judgment, and thus consider the external exhibits and affidavits, when it is "satisfied that the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings" and the issues involved are "discrete and dispositive."  *Adipar Ltd. v. PLD Int'l Corp.*, No. 01 Civ. 0765, 2002 WL 31740622, at *4 (S.D.N.Y. Dec. 4, 2002).  When a non-moving party submits its own exhibits and affidavits in its response papers, it cannot claim to be caught by surprise.  *See Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) ("In this case, it was plaintiff who submitted the affidavit relied upon by the district court and who thus invited Judge Stanton to rely not only on the complaint, but upon the more elaborate explication of plaintiff's grievance contained in his affidavit.  He certainly cannot be heard to claim that he was surprised when the district court accepted his invitation. Indeed, the district court arguably would

7

have erred in declining to do so.  In consequence, the motions properly were converted."
(internal quotation omitted)).

Florida Defendants' Motion will be converted to a motion for summary judgment,
because discovery is complete and it was Plaintiffs, the non-movants, who asked the Court to
rely on materials outside the pleadings to defeat Florida Defendants' Motion.  Under these
circumstances, Plaintiffs cannot claim to have been prejudiced or surprised by the application of
Fed. R. Civ. P. 56, rather than Fed. R. Civ. P. 12(b)(6).  *See Kennedy v. Empire Blue Cross &
Blue Shield*, 989 F.2d 588, 592 (2d Cir. 1993) (holding that conversion was proper, and Plaintiffs
could not claim unfair surprise, because Plaintiffs submitted and relied on correspondence in
opposition to motion to dismiss to demonstrate exhaustion of remedies).

### 2.  Summary Judgment

It is well established that summary judgment is appropriate where there exists "'no
genuine issue as to any material fact and that the moving party is entitled to a judgment as a
matter of law.'"  *Cleotex Cop. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.
56(c)).  "If the evidence is such that, when viewed in the light most favorable to the nonmoving
party, a reasonable fact finder could return a verdict for that party, then a genuine issue of
material fact exists, and summary judgment is not warranted."  *Magan v. Lufthansa German
Airlines*, 339 F.3d 158, 161 (2d Cir. 2003).  Although the burden is on the movant to show that
there is no genuine factual dispute, *see L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d
Cir. 1998), once the moving party has satisfied its burden, the nonmoving party must set forth
specific facts demonstrating that there exists a genuine issue for trial, *see Shannon v. New York
City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003).  A motion for summary judgment cannot be

defeated by relying on mere speculation, conjecture, or conclusory allegations to create an issue of fact. *Id.*

B.  New York City's Motion for Summary Judgment

1.  Municipal Liability Under Section 1983

Batista alleges that he was arrested and detained by New York City without probable cause in violation of his rights under the Eighth and Fourteenth Amendments of the United States Constitution.  (Am. Compl. ¶¶ 27-28.)  To establish municipal liability in an action under Section 1983 for alleged violations of constitutional rights, Batista must demonstrate that the constitutional deprivation resulted from a municipal policy or custom.  *See Russo v. City of Bridgeport*, 479 F.3d 196, 212 (2d Cir. 2007); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[,] the government as an entity is responsible under § 1983.").  "[A] municipality cannot be held liable solely because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Monell*, 436 U.S. at 691 (emphasis omitted).  Rather, Batista must demonstrate that there exists some municipal policy or custom, and some causal connection between the policy and the alleged deprivation.  *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004); *see also Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).  The mere assertion that there exists such a policy or custom, absent specific allegations of fact tending to support such an inference, is insufficient.  *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).  Furthermore, "[a] single incident alleged in a complaint, especially if it involved only actors below the policy-making

9

level, does not suffice to show a municipal policy." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir 1991); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

Applying these straightforward principles, Batista must first show that his rights were violated as a result of a municipal policy or custom. Batista has failed to do so, because rather than identify a municipal policy maintained by New York City which results in false arrests and illegal detentions, Batista has only pled a particular instance of alleged misconduct by low-ranking police officers, which alone is insufficient to state a claim. *See Ricciuti*, 941 F.2d at 123. Furthermore, even reading Batista's pleadings liberally to construct a failure to train claim based on a policy of failing to "exchang[e] vital information," there is no admissible evidence before this Court to suggest the existence of such a policy beyond Batista's own singular incident. *See Tuttle*, 471 U.S. at 823-24 ("Proof of a single incident of unconstitutional activity is not sufficient to impose municipal liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *see also Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995) ("In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy."). Indeed, putting aside the paucity of evidence to support his case, Batista's allegations amount to little more than a recitation of the facts surrounding his own arrest, and consist of exactly the type of "'conclusory, boilerplate statement[s]'" proscribed by the courts as insufficient to establish a finding of an unconstitutional municipal policy. *Smith v. City of New York*, 290 F. Supp 2d 317, 322 (E.D.N.Y 2003) (quoting *Perez v. County of Westchester*, 83 F.

10

Supp. 2d 435, 438  (S.D.N.Y. 2000)); *see also Dwares*, 985 F.2d at 100.

Furthermore, where the basis of a claim of municipal liability is a failure to train or supervise, the Supreme Court has held that liability will only be triggered where the failure "amounts to deliberate indifference to the rights of persons with whom the municipal actor will come in contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007).  Under *Harris*, Batista must also "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury.'" *Amnesty Am.*, 361 F.3d at 129 (quoting *Harris*, 489 U.S. at 391).  The Second Circuit has identified three requirements necessary to satisfy the "deliberate indifference" standard to give rise to municipal liability under a failure to train claim.  *See Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1993).  First, Batista must establish that a "policymaker knows 'to moral certainty' that her employees will confront a given situation." *Jenkins*, 478 F.3d at 94 (quoting *Walker*, 974 F.2d at 297).  "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." *Id.*  Finally, Batista must establish that a municipal employee's failure to handle the given situation appropriately will often cause the deprivation of a citizen's constitutional rights. *Id.*  As noted above, Batista has failed to present *any* evidence of, let alone sufficiently plead, a municipal policy maintained by the City of New York giving rise to his alleged constitutional deprivation, no less a specific deficiency in its training program.  Moreover, Batista has failed to address the appropriate standard for a finding of municipal policy evidencing deliberate indifference as recognized in the Second Circuit.  Accordingly, Batista's Section 1983 claim

must fail.

Even assuming, *arguendo*, that Batista had pled facts sufficient to establish municipal liability based on a municipal policy or custom, it is well established that there is no civil remedy available to a plaintiff arrested pursuant to a valid arrest warrant under Section 1983. *See Russo*, 479 F.3d at 206 (holding that a plaintiff held "pursuant to warrant satisfying fourth amendment standards . . . did not . . . give rise to a constitutional claim." (citing *Baker v. McCollan*, 443 U.S. 137, 145 (1979))). Despite Batista's protestations otherwise, he has not pointed to any evidence that suggests he was arrested pursuant to anything other than a valid arrest warrant for probation violations. Correspondence between the Florida Department of Corrections and New York Department of Probation makes clear that the State of Florida maintained records indicating that Batista had failed to pay any of the monetary obligations under the special conditions of his probation (making the total amount he owed irrelevant), and as such, Batista was deemed to be in violation of his probation. (City's Notice of Mot., Exs. F, G.) And, even if Batista could lodge a constitutional objection to the *issuance* of the Florida warrant, he has failed to allege, let alone substantiate, a claim that New York City official somehow knew or should have known that the warrant was invalid. This deficiency alone is fatal to Batista's case against New York City.[3] *See Tornheim*, 363 F. Supp. 2d at 676-77 (when relying upon a facially valid warrant, a

---

[3] Batista does not deny that he failed to satisfy the monetary obligations of his probation. Instead, he meekly claims he was unaware of the conditions of his probation, including the monetary obligations imposed on him. (Batista's Aff. In Opp'n ¶ 6.) This argument is unpersuasive. First, although Batista points to the two separate orders of probation issued by the State of Florida as evidence to bolster his claim of ignorance, he concedes that one of those orders bears his signature. (*Id.* Ex. C.) Second, Batista touts to his own credit the fact that he completed 307 hours of community service, some 257 hours in excess of the court order. (*Id.* ¶ 8.) Interestingly, Batista's community service requirements were laid out on the very same page of the signed court order that detailed Batista's monetary obligations. (*Id.* Ex. C.) Given these

sheriff is "'afforded complete protection from liability for any proper act done in its execution.'"

(quoting *Iovinella v. Sheriff of Schenectady Co.*, 413 N.Y.S.2d 497, 499 (App. Div. 1979)).

Finally, in accordance with the Supreme Court's ruling in *City of Los Angeles v. Heller*,

475 U.S. 796 (1986), the Second Circuit has consistently held that "a municipality cannot be

liable for inadequate training or supervision when the officers involved in making an arrest did

not violate the plaintiff's constitutional rights." *Curley v. Village of Suffern*, 268 F.3d 65, 71 (2d

Cir. 2001). Since none of Batista's constitutional rights was violated, Batista cannot advance a

claim for inadequate training or supervision.

## 2. Conspiracy Claim

Batista also alleges that Defendants conspired to deprive him of his rights secured by the

Eighth and Fourteenth Amendments of the United States Constitution in violation of Section

1983, as well as his rights secured by Article I, § 12 of the New York Constitution.[4] To state a

claim for conspiracy under Section 1983, Batista must show: "(1) an agreement between two or

---

facts, no reasonable fact finder could agree with Batista that he was unaware of his monetary obligations. Finally, it is well settled that failure to read or comprehend a court order will not satisfy the excusable neglect standard for failure to comply. *See Canfield v. Van Atta Buick/GMC Truck*, 127 F.3d 248, 250 (2d Cir. 1997) ("[F]ailure to follow the clear dictates of a court rule will generally not constitute such excusable neglect.").

Regardless of the minor differences between the two orders of probation issued by the State of Florida, the uncontroverted fact remains that Batista failed to fulfill *any* of the monetary obligations under the terms of his probation, which in turn triggered the issuance of a warrant for his arrest. (New York City's 56.1 Stmt. Exs. F, G.) As a result, Batista's claim that the arrest warrant issued by the Circuit Court of Hillsborough County on June 7, 2001 was "facially invalid," (Plaintiffs' Statement of Contested Material Facts Pursuant to Local Rule 56.1 ¶ 13 ("Pls.' 56.1 Stmt.")), is without merit.

[4]For the reasons given below, Batista's conspiracy claim brought under Article I, § 12 of the New York Constitution is dismissed, because conspiracy claims can be brought under Section 1983.

13

more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Conclusory allegations of a Section 1983 conspiracy are not sufficient to survive a motion to dismiss, *see Dwares v. City of New York*, 985 F.2d 94, 99-100 (2nd Cir. 1993), even though the Second Circuit has acknowledged that "conspiracies are by their very nature secretive operations," *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994), and may have to be proven by circumstantial, instead of direct, evidence.

Even assuming that Batista's arrest and detention satisfies the overt act requirement of a Section 1983 claim, which is extremely generous given that his arrest was obtained pursuant to a facially valid arrest warrant, he has no evidence that any of the Defendants in this case agreed to act in concert to inflict an unconstitutional injury on Batista.  Batista has failed to produce any admissible evidence on at least two of the three elements of a Section 1983 conspiracy claim, so summary judgment is granted in favor of New York City on this claim.

### 3.  Batista's Claims Under New York State Law

In addition to his claim of municipal liability and his federal conspiracy claim, both brought under Section 1983, Batista asserts common law claims under New York state law for false arrest and false imprisonment;  intentional infliction of emotional distress; negligent infliction of emotional distress; negligent hiring, training and retention of employment services; and a claim under Article I, § 12 of the New York Constitution.  The Court will address each claim individually below.

14

### a.  False Arrest and False Imprisonment

Batista alleges that his arrest by unnamed officers of the New York City Police Department constitutes false arrest and false imprisonment.  (Am. Compl. ¶ 34.)  A claim for false arrest under New York law is "substantially the same" as a claim under Section 1983. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  Additionally, the "common law tort of false arrest is a species of false imprisonment," as both claims have identical elements.  *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  A plaintiff claiming false arrest or false imprisonment under New York law, must show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  *Id.* (quoting *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975)); *see also Weyant*, 101 F.3d at 852.  It is well-settled that the existence of probable cause is justification for an arrest within the meaning of the fourth element, and will be "a complete defense to an action for false arrest."  *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).  Similarly, it is abundantly clear "that a finding of probable cause will defeat a state tort claim for false imprisonment."  *Zanghi v. Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985).  An arrest made pursuant to a valid arrest warrant "creates a presumption that probable cause existed, and is rebuttable only through proof of fraud, perjury or the misrepresentation or falsification of evidence."  *Artis v. Liotard*, 934 F. Supp. 101, 103 (S.D.N.Y. 1996).

As noted above, Batista was arrested pursuant to a valid arrest warrant issued by the State of Florida for probation violations.  Batista has offered no evidence or even a viable allegation that any New York City official engaged in any misconduct in the procurement of the Florida

Warrant. All he has pointed to is a document issued by the Florida Department of Corrections requesting a progress report on Batista's compliance with the terms of his probation. (Pls.' Affirmation in Opp'n, Ex. F.) That document does not indicate that it was received by New York City–in fact, it is stamped as "received" by the Florida Defendants–and even if New York City had received it, it would be of no avail. The uncontroverted fact remains that Batista was arrested pursuant to a facially valid arrest warrant, and Batista waived any objection in open court to the imposition of financial obligations owed to Florida as part of his probation. (*See* Tr. of R. at 8-9, *Florida v. Batista*, No. 98-002442, Div. A (Fla. Cir. Ct. July 1, 1998).) Beyond that, Batista has failed to identify the individuals who he says injured him, and he has failed to identify where any actor erred in a way that entitles him to compensation under the law. None of Batista's unsubstantiated allegations is sufficient to rebut the presumption of probable cause for a facially valid arrest warrant, which proves fatal to his false arrest and false imprisonment claims. As a result, summary judgment is granted on this claim.

### b. Intentional and Negligent Infliction of Emotional Distress

Batista alleges that during his nine-day detention by New York City, he was held without proper food or hygienic care, and that such conduct intentionally caused him emotional distress. (Am. Compl. ¶ 43.) Batista also alleges that by nature of his alleged "wrongful and false arrest, detention and imprisonment," New York City is liable to him for negligent infliction of emotional distress. (*Id.* ¶ 49.)

Batista's intentional infliction of emotional distress claim must fail as a matter of law, because it is "'well-settled that public policy bars claims sounding in intentional infliction of emotional distress against a government entity.'" *Rivera v. City of New York*, 392 F. Supp. 2d

644, 657 (S.D.N.Y. 2005) (quoting *Lauer v. City of New York*, 659 N.Y.S.2d 57, 58 (App. Div. 1997)).  As the only named defendants in this action are the City of New York and the State of Florida, without identifying any specific individual responsible for Batista's alleged emotional distress, Batista cannot state a claim for intentional infliction of emotional distress claims.

Moreover, even assuming Batista had named an individual municipal actor instead of a government entity in his complaint, his claim would still fail as New York law "requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."  *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Id.* (internal quotations omitted).  The requirements to sustain such a claim are difficult to satisfy, and as a result, Batista's wholly conclusory allegations fail to satisfy such a burdensome standard.  As described above, Batista was arrested pursuant to a facially valid warrant for violation of his probation, and detained for a total of nine days.  (New York City's 56.1 Stmt. ¶¶ 24-26.)  While the Second Circuit has sustained claims for intentional infliction of emotional distress where the cases involved "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy," *Stuto*, 164 F.3d at 828, there is no evidence or specific allegation of conduct in this case that rises to such a level.  While detention can undoubtedly be unpleasant, Batista's circumstances certainly do not rise to the level of conduct "utterly intolerable in a

17

civilized society." *Id.* at 827 (internal quotations omitted).

Similarly, in order to sustain a claim of negligent infliction of emotional distress, a plaintiff must allege conduct which satisfies the outrageous and extreme standard described above. *See Dorn v. Maffei*, 386 F. Supp. 2d 479, 486 (S.D.N.Y. 2005). Because Batista has failed to offer any evidence to support his claim of inadequate food and hygienic care during his detention by New York City, let alone allege any conduct which might be characterized as extreme or outrageous, his claim of negligent infliction of emotional distress claim must likewise fail.

### c.  Negligent Hiring, Training and Retention of Employment Services

Batista next claims that New York City was negligent in hiring, training, and retaining the officers responsible for his arrest and subsequent detention. More specifically, Batista argues that New York City "should have known through the exercise of reasonable diligence that the individual defendants would act in an irrational manner." (Am. Compl. ¶ 55.) Batista alleges that New York City is liable for the alleged tortious conduct of its employees based on a theory of negligent hiring, training, and retention. In order to sustain such a claim under New York law, "in addition to the standard elements of negligence, a plaintiff must show:  (1) that the tort-feasor and the defendant were in an employee-employer relationship, (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal quotations and citations omitted).

With respect to the first element, Batista has failed to name any of his alleged tortfeasors,

18

and thus cannot establish the requisite employee-employer relationship.  Furthermore, because Batista has failed to name any individual defendant employed by the City of New York, it is impossible to maintain that the City of New York was aware of any employee's propensity for the alleged tortious conduct.  Consequently, summary judgment is granted on this claim.

### d.  New York Constitution

Finally, Batista alleges that by nature of his arrest and detention, he was deprived of his rights secured by Article I, § 12 of the New York State Constitution, prohibiting unreasonable searches, seizures, and interceptions.  The Court grants summary judgment on this claim, because there is no private right of action under the New York State Constitution for claims that are remediable under Section 1983 or other state laws.  *See Coakley v. Jaffe*, 49 F. Supp. 2d 615, 628 (S.D.N.Y. 1999).  Because Batista alleged federal constitutional violations under Section 1983, as well as numerous other state common law tort claims, he cannot assert a separate cause of action under the New York State Constitution.

### C.  Florida Defendants' Motion to Dismiss/Motion for Summary Judgment

The Florida Defendants argue that they enjoy sovereign immunity under the Eleventh Amendment of the U.S. Constitution.  The Eleventh Amendment provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  It has long been settled that the Eleventh Amendment generally bars private individuals from bringing suit against nonconsenting states in federal court.  *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. Of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006).  Eleventh Amendment immunity has also been

interpreted as extending to prohibit "federal suits against state governments by a state's own

citizens." *Id.* (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)).

Eleventh Amendment immunity extends not only to the individual states, but also to state

agents and state instrumentalities said to be arms of the state. *See McGinty v. New York*, 251

F.3d 84, 95 (2d Cir. 2001). Whether or not a state's sovereign immunity extends to a particular

state instrumentality generally turns on its relationship to the state. *See Woods*, 466 F.3d at 236

("[A] governmental entity is entitled to Eleventh Amendment immunity only if 'it is more like an

arm of the state, such as a state agency, than like a municipal corporation or other political

subdivision.'") (internal quotations omitted). "In most cases, if the suit names a state

instrumentality, but seeks money damages, which, if awarded, would be paid by the state, that

instrumentality may invoke sovereign immunity." *Simons v. New York*, 472 F. Supp. 2d 253,

260 (N.D.N.Y. 2007) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430 (1997)).

Plaintiffs have named the "State of Florida: Department of Corrections, and the State of

Florida: Tampa East Division and Parole" as defendants, and seek compensatory damages of

$500,000 for each of the six counts in the Complaint. (Am. Compl. ¶¶ (a)-(f).) The State of

Florida: Department of Corrections is an agency of the State of Florida, and enjoys sovereign

immunity. *See Walden v. Florida Dep't of Corr.*, 975 F. Supp. 1330, 1331 (N.D. Fla. 1996)

(holding that Florida State: Department of Corrections is "clearly the equivalent of the State of

Florida for Eleventh Amendment purposes"). Moreover, there can be no doubt that any money

damages, if awarded, would be paid by the State of Florida. *See* Fla. Stat. § 768.28(1).

With respect to the remaining named defendant, the Court takes judicial notice of the fact

that State of Florida, Tampa East Division and Parole, is a field office of the State of Florida:

20

Department of Corrections, and is entitled to all the rights, privileges and immunities enjoyed by

the Department of Corrections.  *See* Florida Department of Corrections Website,

http://dc.state.fl.us/facilities/comcor/13.html (noting the relationship between the Tampa East

Division and Parole and the Department of Corrections).  Thus, it is also immune from suit.  *See*

*Walden*, 975 F. Supp. at 1331.

Of course, Florida's sovereign immunity under the Eleventh Amendment is not absolute.

Congress may exercise its authority under Section 5 of the Fourteenth Amendment to abrogate a

state's immunity, or a state may waive its immunity and consent to be sued in federal court.  *See*

*Woods*, 466 F.3d at 236.  Indeed, Batista contends that the Florida Defendants waived their

Eleventh Amendment immunity through their correspondence with the Florida State Attorney

General's office and their compliance with Fla. Stat. § 768.28(6)(a).[5]  While it is clear that

section 768.28 expressly waives Florida's state sovereign immunity from tort claims in its state

courts subject to certain limitations, section 768.28 contains no such waiver of its Eleventh

Amendment immunity in federal courts, and none should be inferred from the state court waiver.

*See Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990) ("Evidence that a state has waived

sovereign immunity in its own courts is not by itself sufficient to establish waiver of Eleventh

Amendment immunity from suit in federal court.").  In fact, section 768.28(18) expressly

reserves Florida's immunity from suits in federal court.  It reads:

---

[5] Section 768.28(6)(a) provides:  "An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing..."  Fla. Stat. § 768.28(6)(a).

> No provision of this section, or of any other section of the Florida Statutes, whether read separately or in conjunction with any other provision, shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court.

Fla. Stat. § 768.28(18). Section 768.28(18) "declares the legislature's intention that Florida statutes not be construed to waive Eleventh Amendment immunity unless they explicitly waive immunity from suit in federal court." *Schopler*, 903 F.2d at 1379 (emphasis omitted); *see also Gamble v. Florida Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1515 (11th Cir. 1986). Thus, the Eleventh Circuit has held that section 768.28 "does not waive Florida's Eleventh Amendment immunity" in federal court. *Schopler*, 903 F.2d at 1379.

Although Batista argues that his correspondence with the Florida Attorney General's Office constitutes the requisite waiver of sovereign immunity, that correspondence fails to expressly and clearly waive Florida Defendants' immunity. Instead, the correspondence Batista relies on merely instructs Plaintiffs that service of the Complaint on the Florida Defendant was defective, and that the State of Florida Attorney General's Office was not authorized to accept service on their behalf. (Pls.' Affirmation in Opp'n, Ex. M.) There is no language in the correspondence to suggest the State of Florida unequivocally intended to waive its Eleventh Amendment immunity or any other defense, and no reasonable fact-finder could find otherwise. *See Welch v. Texas Dept. of Highways*, 483 U.S. 468, 473 (1985) ("[T]he Court will find a waiver by the State only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."

(internal quotations and citations omitted)); *see also CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 95 (2d Cir. 2002) (noting that a state's valid waiver of its Eleventh Amendment immunity must be "'an unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment.'" (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)). Consequently, summary judgment in favor of Florida Defendants is granted, because Florida Defendants are immune from suit in this Court. [6]

### D.  Sanchez's Claim for Loss of Consortium

Anna Sanchez, Batista's wife, asserts a state law claim for loss of consortium and companionship stemming from her husband's arrest and subsequent detention by New York City.  (Am. Compl. ¶¶ 31, 41, 57, 51, 58, 65; Pl's Mem. of Law in Opp'n 9.)  As loss of consortium is a derivative claim, it may only survive if one of Batista's claims is viable.  *See Smith v. City of New York*, 388 F. Supp. 2d 179, 187 (S.D.N.Y. 2005).  Since all of Batista's claims have been dismissed, Sanchez's loss of consortium claim must also be dismissed.

### III.  Conclusion

For the reasons stated above, New York City's and Florida Defendants' Motions are GRANTED.  The Clerk of the Court is directed to close the case.

---

[6] Batista's claims against the Florida Defendants also fail for the reasons discussed in Part II. B.

III.  Conclusion

For the reasons stated above, New York City's and Florida Defendants' Motions are

GRANTED.  The Clerk of the Court is directed to close the case.

SO ORDERED.


Dated:          September 24 , 2007
                New York, New York

                                        _____
                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

24